IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE: AMERICAN MEDICAL SYSTEMS, INC.
       PELVIC REPAIR SYSTEMS
        PRODUCT LIABILITY LITIGATION         MDL No. 2325

-----------------------------------------------------------------
THIS ORDER RELATES ONLY TO CIVIL ACTIONS:

**Elliott v. AMS, Inc.**        **2:14-cv-11870**
**Greenier v. AMS, Inc.**      **2:14-cv-28142**

## MEMORANDUM OPINION and ORDER

Pending are the Motions for Protective Order and Motions to Quash Subpoena of non-parties, Dr. Christopher Walker and Chelly Exum.[1] Defendant American Medical Systems, Inc. ("AMS") has filed a brief in opposition to the motions, and the non-parties have responded. Accordingly, the issues have been fully briefed, and the undersigned finds no need for oral argument. For the reasons set forth below, the court **GRANTS**, in part, and **DENIES**, in part, the Motion for Protective Order and **DENIES** the Motion to Quash.

### I.   Relevant Facts

This multidistrict litigation ("MDL") involves pelvic mesh products manufactured, marketed, and distributed by AMS. The products include surgical mesh intended to be permanently implanted during operative procedures for the treatment of pelvic organ prolapse and stress urinary incontinence. Plaintiffs claim, *inter alia*, that the mesh is

---

[1] ECF No. 27 in *Elliot v. AMS* and ECF No. 19 in *Greenier v. AMS*.

1

defective, causing harm to the body and leading to complications, such as chronic pain and scarring. Consequently, some of the plaintiffs have undergone surgical procedures to revise the implanted mesh, or to remove it altogether ("corrective surgeries").

In the course of discovery, AMS learned that a portion of the plaintiffs had their corrective surgeries arranged and funded through third-party funding companies. According to AMS, these arrangements were frequently complex, usually expensive, and occasionally unnecessary, as some of the plaintiffs receiving the funding had health insurance to cover similar procedures. AMS was stymied in its efforts to discover the details of the funding arrangements from the plaintiffs, who seemed to know little more about them than AMS. Confronted with a lack of transparency regarding a key element of damages, AMS began seeking information from non-parties about the third-party funding of corrective surgeries. At issue were both the cost and the medical necessity of the procedures.

In May 2016, AMS took the deposition of Dr. Christopher Walker, a gynecologist practicing in Florida. Dr. Walker testified that he operated two businesses under which he performed corrective surgeries. One—UroGyn Specialists of Florida—typically accepted insurance reimbursement for the procedures, while the other—Med/Surg Consultants—largely dealt with plaintiffs involved in transvaginal mesh litigation who were financing their treatment through litigation funders. Dr. Walker further testified that he performed corrective surgeries on two of the plaintiffs in this MDL, Ms. Elliot and Ms. Greenier, who paid for their corrective surgeries through third-party funding. AMS's counsel asked Dr. Walker a host of questions pertaining to the charges associated with the funded surgeries. While Dr. Walker was able to answer some of the inquiries, other questions he deferred to his Chief Financial Officer, Ms. Chelly Exum.

Accordingly, AMS followed-up Dr. Walker's deposition by requesting the deposition of Ms. Exum. After some communication between counsel for AMS and counsel for Dr. Walker, AMS provided Dr. Walker with a list of documents that, if provided, might eliminate the need for Ms. Exum's deposition. Dr. Walker supplied the requested documents; however, AMS expressed its desire to proceed with Ms. Exum's deposition on the basis that the documents "were not explanatory." At that point, Dr. Walker and Ms. Exum filed the instant motion, arguing that Ms. Exum should not be compelled to sit for an oral deposition. They assert that the information sought by AMS requires merely "rote responses containing the identity of persons or entities, dollar amounts, percentages, and other data driven answers" and can be provided in a "less intrusive, more cost-effective manner" by a deposition through written questions pursuant to Fed. R. Civ. P. 31. Dr. Walker and Ms. Exum do not object to providing the information, but contend that the cost associated with an oral deposition is burdensome and is disproportional to the needs of the case.

AMS responds by arguing that Dr. Walker and Ms. Exum must do more to carry their motions than simply make an unsubstantiated burdensomeness claim. According to AMS, the expense associated with taking Ms. Exum's oral deposition should be no different than the expense of a deposition by written questions. AMS adds that the paperwork previously provided by Dr. Walker is not self-explanatory, contradicts his prior testimony to some degree, and requires clarification from Ms. Exum, which would be easier to obtain through face-to-face questioning than written interrogation.

## II.  <u>Relevant Legal Principles</u>

Federal Rule of Civil Procedure 45(d) sets forth the protections available to a person subject to a subpoena. In particular, Rule 45(d)(3) outlines when a court *must*

quash or modify a subpoena, when it *may* do so, and when the court may direct compliance under specified conditions. According to the rule, a court is "required" to quash or modify a subpoena that: "(i) fails to allow a reasonable time to comply"; "(ii) requires a person to comply beyond the geographic limits specified in Rule 45(c)"; "(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies"; or "(iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). "The burden of persuasion in a motion to quash a subpoena ... is borne by the movant." *Jones v. Hirschfeld*, 219 F.R.D. 71, 74-75 (S.D.N.Y. 2003); *see also HDSherer LLC*, 292 F.R.D. at 308 ("[T]he burden of proof is with the party objecting to the discovery to establish that the challenged production should not be permitted.").

In the context of discovery, "Rule 45 adopts the standards codified in Rule 26." *Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005). As such, "the scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26." *HDSherer LLC v. Nat. Molecular Testing Corp.*, 292 F.R.D. 305, 308 (D.S.C. 2013); *Singletary v. Sterling Transport Co.*, 289 F.R.D. 237, 240-41 (E.D. Va. 2012). In other words, "[a]lthough Rule 45(c) sets forth additional grounds on which a subpoena against a third party may be quashed, ... those factors are co-extensive with the general rules governing all discovery that are set forth in Rule 26." *Cook v. Howard*, 484 F. App'x 805, 812 (4th Cir. 2012); *see also Barber v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 3:14-cv-27349, 2015 WL 6126841, at *5 (S.D.W.Va. Oct. 16, 2015) (citing *Cook*, 484 F. App'x at 812).

Looking to Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case ...." Fed. R. Civ. P. 26(b)(1). Thus, "[r]elevance is ... the foundation for any request

4

for production, regardless of the individual to whom a request is made." *Cook*, 484 F. App'x at 812. Indeed, the Fourth Circuit has recognized that a subpoena seeking irrelevant information may subject its recipient to an "undue burden" under Rule 45(d)(3)(A)(iv). *Id.* at 812 n.7; *see also HDSherer LLC*, 292 F.R.D. at 308 (recognizing that overbroad subpoena or subpoena seeking irrelevant information imposes undue burden on recipient). Rule 26(b)(1) does not exactly define relevancy. Certainly, information is relevant if it logically relates to a party's claim or defense. Although the rule was recently amended to remove language permitting the discovery of "any matter relevant to the subject matter involved in the action" for good cause, and "relevant information … reasonably calculated to lead to the discovery of admissible evidence," the rule in its current form still contemplates the discovery of information relevant to the subject matter involved in the action as well as relevant information that would be inadmissible at trial. Fed. R. Civ. P. 26(b)(1), advisory committee notes to 2015 amendment. Accordingly, it remains true that "relevancy in discovery is broader than relevancy for purposes of admissibility at trial."[2] *See Amick v. Ohio Power Co.*, No. 2:13-cv-6593, 2013 WL 6670238, at *1 (S.D.W.Va. Dec. 18, 2013).

Thus, the discovery rules, including Rule 26, are "to be accorded broad and liberal construction." *Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 209 (W.D. Va. Jan. 25, 2016); *see also CTB, Inc. v. Hog Slat, Inc.*, No. 7:14-cv-157, 2016 WL 1244998, at *3 (E.D.N.C. Mar. 23, 2016). Nevertheless, the recent amendment to Rule 26(b)(1) reminds parties that discovery must also be proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access

---

[2] Federal Rule of Evidence 401 provides that "evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

5

to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). This rule "cautions that all permissible discovery must be measured against the yardstick of proportionality." *Lynn v. Monarch Recovery Management, Inc.,* 285 F.R.D. 350, 355 (D. Md. 2012) (quoting *Victor Stanley, Inc. v. Creative Pipe, Inc.,* 269 F.R.D. 497, 523 (D. Md. 2010)). The determination as to whether a subpoena imposes an undue burden is committed to the discretion of the trial court. *Hirschfeld*, 219 F.R.D. at 74.

Aside from quashing a subpoena, a court may also issue a protective order, for good cause, to protect the subpoena recipient from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Such a protective order may forbid the discovery sought, prescribe an alternative discovery method for obtaining the information sought, or prohibit inquiry into certain matters. *Id.* To succeed under the "good cause" standard of Rule 26(c), a party moving to resist discovery on the grounds of burdensomeness and oppression must do more to carry its burden than make conclusory and unsubstantiated allegations. *Convertino v. United States Department of Justice,* 565 F. Supp.2d 10, 14 (D.D.C. 2008) (the court will only consider an unduly burdensome objection when the objecting party demonstrates how discovery is overly broad, burdensome, and oppressive by submitting affidavits or other evidence revealing the nature of the burden); *Cory v. Aztec Steel Building, Inc.,* 225 F.R.D. 667, 672 (D.Kan.2005) (the party opposing discovery on the ground of burdensomeness must submit detailed facts regarding the anticipated time and expense involved in responding to the discovery which justifies the objection); *Bank of Mongolia v. M & P Global Financial Services, Inc.,* 258 F.R.D. 514, 519 (S.D.Fla.2009) ("A party objecting must

6

explain the specific and particular way in which a request is vague, overly broad, or unduly burdensome. In addition, claims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome").

Under Rules 26(b)(2)(C) and 26(c), "the court has broad authority to limit discovery and prescribe alternative discovery mechanisms," *Minter v. Wells Fargo Bank, N.A.,* 258 F.R.D. 118, 124 (D.Md. 2009); put simply, to determine "when a protective order is appropriate and what degree of protection is required." *Furlow v. United States,* 55 F.Supp.2d 360, 366 (D.Md. 1999) (quoting *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984)). Notwithstanding the court's broad authority, protective orders "should be sparingly used and cautiously granted." *Baron Fin. Corp. v. Natanzon,* 240 F.R.D. 200, 202 (D. Md. 2006) (quoting *Medlin v. Andrew,* 113 F.R.D. 650, 653 (M.D.N.C. 1987)). Moreover, a court's customary reluctance to constrain discovery is heightened in the case of a motion seeking to prevent the taking of a deposition. *Minter,* 258 F.R.D. at 125 (citing *Static Control Components, Inc. v. Darkprint Imaging,* 201 F.R.D. 431, 434 (M.D.N.C. 2001)) ("By requesting the Court to prohibit plaintiff from deposing a witness, defendant ... assumes a heavy burden because protective orders which totally prohibit a deposition should be rarely granted absent extraordinary circumstances."). The reason for this is fundamental. Usually, the subject matter of a deposition is not well-defined in advance; thus, the need for prospective relief is more difficult to establish than in other methods of discovery. In addition, "a motion can be made if any need for protection emerges during the course of the examination;" therefore, a ruling prior to commencement of the deposition is not necessary to achieve a fair resolution. 8 Wright & Miller, *Federal Practice and Procedure,* § 2037 (3d Ed.). As a

result, the burden to show good cause for an order prohibiting the taking of a deposition is especially heavy. *Medlin,* 113 F.R.D. at 653; *Motsinger v. Flynt,* 119 F.R.D. 373, 378 (M.D.N.C. 1988) ("Absent a strong showing of good cause and extraordinary circumstances, a court should not prohibit altogether the taking of a deposition.")

**III.  Analysis**

In this case, Dr. Walker and Ms. Exum do not dispute the relevance of the information sought by AMS, nor do they oppose participation in all avenues of discovery. Rather, they argue that the cost of retaining an attorney to prepare and represent Ms. Exum at an oral deposition is burdensome; particularly, when the subject matter of the proposed deposition could be fully addressed through written interrogation under Fed. R. Civ. P. 31. Dr. Walker and Ms. Exum do not provide any support for their contention, and the undersigned does not find the argument at all persuasive.

As AMS notes, the lion's share of the expense associated with an oral deposition of Ms. Exum will be borne by AMS and the plaintiffs' counsel, who will have to travel to Florida for the testimony. Moreover, Ms. Exum should not require much preparation if the areas of inquiry require only "rote responses containing the identity of persons or entities, dollar amounts, percentages, and other data driven answers," as represented by Dr. Walker and Ms. Exum in their reply brief. Furthermore, providing answers pursuant to a deposition by oral examination may actually shorten the length of time spent by Ms. Exum in the discovery process.

To depose a person under Rule 31, the parties must prepare their written examination, cross examination, redirect examination, and recross examination well in advance of the deposition, so that the written questions can be exchanged and provided to the court reporter for presentation to the deponent. Fed. R. Civ. P. 31(a). The deponent

8

must then appear in person before the court reporter, who proceeds "in the manner provided in Rule 30(c), (e), and (f) to ... take the deponent's testimony in response to the questions." Fed. R. Civ. P. 31(b)(1). Of note, Federal Rule 30(c)(3) provides that "[i]nstead of participating in the oral examination, a party may serve written questions in a sealed envelope on the party noticing the deposition, who must deliver them to the officer [court reporter]. The officer ***must ask the deponent those questions and record the answers verbatim.***" Fed. R. Civ. P. 30(c)(3) (emphasis added). Therefore, as these sections indicate, the deponent must still appear in person and answer questions orally.

Equally important, because entire sets of questions are prepared by the parties in advance of the deposition, without the benefit of any answers, and are posed to the deponent by the court reporter, the inquiry lacks flexibility and spontaneity. Consequently, not only is the pre-deposition process onerous for the parties, but the testimony may actually take longer for the witness given that all of the questions provided to the court reporter must be asked, regardless of whether answers provided by the deponent render subsequent questions irrelevant or superfluous. Finally, contrary to the non-parties' belief, a deposition by written questions would not obviate the need for witness preparation as Ms. Exum would still be required to appear in person and provide spontaneous oral answers to the written questions. Therefore, her role at the deposition would be essentially the same, regardless of whether the deposition was taken pursuant to Rule 30 or Rule 31.

However, the undersigned agrees with Dr. Walker and Ms. Exum that the deposition should be limited in both scope and time. Having thoroughly reviewed the written submissions of counsel and the deposition transcript of Dr. Walker, the court **ORDERS** as follows:

9

1. The parties may take an oral deposition of Ms. Exum within the next **twenty-one (21) days** at a date, time, and location agreed to by Ms. Exum and the parties.

2. The deposition shall last no longer than **two (2) hours**.

3. The topics of inquiry shall be limited to:

   a. The number of corrective surgeries performed by Dr. Walker at Clermont Ambulatory Surgical Center;

   b. The amount Dr. Walker is paid for a corrective surgery when acting on behalf of Med/Surg Consultants, and the amount he is paid for a corrective surgery when acting on behalf of UroGyn Specialists;

   c. The names of the entities that pay Dr. Walker for corrective surgeries at Clermont Surgical Center;

   d. The amount Dr. Walker was paid for the corrective surgery performed on Ms. Greenier, and for the corrective surgery performed on Ms. Elliot. This area of inquiry shall include an explanation of the documentation previously supplied by Dr. Walker/Ms. Exum.

   e. The amounts paid to Dr. Walker for corrective surgeries based on referrals from Surgical Assistance and any changes of those amounts over time;

   f. The amount Dr. Walker received from Broward Outpatient Medical Center to perform a history and physical examination on a female patient;

   g. Access to the Smart Sheet database by Dr. Walker or anyone in his employ or at his offices.

   h. The percentage of Med/Surg Consultants' patients receiving corrective surgery that came from out-of-state;

   i. Payments made by Dr. Walker to Surgical Assistance related to patients receiving corrective surgeries;

   j. Payments made to Dr. Walker for services provided to patients seeking corrective surgeries that were not made for performing surgery; and

   k. The number of employees/contractors at UroGyn Specialists.

Therefore, the Motion for Protective Order is **GRANTED** to the extent that the deposition of Ms. Exum shall be limited in time and scope as set forth above. The Motion to Quash is **DENIED** for the reasons set forth herein.

The Clerk is directed to provide a copy of this Order to counsel of record and to counsel for Dr. Walker and Ms. Exum.

       **ENTERED:** August 17, 2016

       _____
       Cheryl A. Eifert
       United States Magistrate Judge